Doris Bauer, Landlord, *v.* Bar Garage Corp., Tenant.

Municipal Court of the City of New York, Borough of The Bronx, October 9, 1953.

*Bertram Braufman* for landlord.

*Benjamin Sharaga* and *Eugene Sugarman* for tenant.

LASHIN, J. This is a holdover proceeding brought by the landlord of premises 1529–39 Boone Avenue, Bronx, New York, against the present tenant thereof. The petition sets forth two grounds for the relief sought. The second cause of action was discontinued by the landlord and we need concern ourselves only with the first cause of action wherein the landlord seeks a final order pursuant to the provisions of subdivision (k) of section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd.), known as the " matched lease " provision.

The facts are not in dispute. Tenant occupies a one-story building, all at street level, wherein it conducts a public garage business including the sale of gas fuel. It is a statutory tenant, its lease having expired. Landlord has entered into a ten-year lease of the premises with one William Cohen, for a rental of over $3,600 per annum. The purpose clause of the lease shows that it is to be used and occupied for " a machine shop, the manufacture of machinery, machine parts, metal products and products made of wood and other material, the manufacture and sale of personal property and the rendition of services in connection therewith." It is conceded that a copy of this lease was delivered to the tenant and an opportunity given to it to match the terms thereof, within the time prescribed by the statute, and that the tenant failed to do so. The *bona fides* of the proposed lease is likewise not questioned. The proposed lease was not cancelled since the time of its execution. The only witnesses to testify were the landlord's agent and Cohen, the prospective tenant.

At the conclusion of the trial, tenant moved to dismiss the petition upon the ground that the proposed lease was not a noncancelable lease within the meaning of the matched lease provision of the rent law. Decision was reserved on the motion. Tenant then rested and renewed its motion on which decision was likewise reserved.

In his brief, tenant's attorney urges an additional ground for dismissal, namely, that the premises involved are not a store within the meaning of the Commercial Rent Law.

I shall first consider this contention for, if the tenant is correct in making same, there would be no need to go any further.

Subdivision (k) of section 8 defines the word store as follows: " As used in this subdivision the word ' store ' shall mean commercial space at street level and two floors above and below street level or any part thereof, provided it includes space at street level, used or to be used and/or occupied or to be occupied

by a tenant for the sale of personal property and/or the rendition of services in the ordinary course of business.''

There is nothing ambiguous about this definition and the premises in question are clearly within its confines. The premises are commercial space at street level. They are used for the sale of personal property — fuel oil, and the rendition of services — garage services. Furthermore, they are to be occupied for the sale of personal property, Cohen, the prospective tenant, testifying that the premises were to be used for '' manufacturing and selling personal property.'' The premises are therefore a store within the meaning of the law.

We come then to the question of whether the proposed lease is noncancelable.

Tenant contends that the provisions of paragraph 42d of the proposed lease rendered it a cancelable lease. Said paragraph reads in part as follows: '' Provided, however, that if structural and/or repairs of a major or substantial character shall be required, such as for example, the building of exits or new doors, or fireproofing, etc., in order to qualify for a certificate of occupancy, the Tenant shall not be obligated to make those repairs but it shall be the obligation of the Landlord to do so, that the premises may qualify for a certificate of occupancy, and such certificate shall issue. Should the Landlord default in his said obligation provided for in this paragraph and should she fail within fifteen (15) days after written notice with respect to same to advise the Tenant in writing that the Landlord will perform her said obligation, then the sole remedy of the Tenant shall be the right by written notice given within twenty (20) days after first notification aforesaid to the Landlord to cancel this lease and the Landlord shall not otherwise be liable to the Tenant with respect to such default.''

Tenant argues that if landlord refuses to make the substantial repairs she is obligated to make under this paragraph, after the prospective tenant secures possession of the premises, the prospective tenant would be forced to cancel the lease leaving the landlord with possession of the premises which she could not have secured in any other way. Tenant concedes that under the provisions of subdivision (k) a lease may be cancelable upon a breach of its terms and conditions but seeks to make a distinction between a cancellation by a landlord for a breach by a tenant and a cancellation by a tenant for a breach by a landlord. There is no basis for such a distinction. The language of the section is: '' non-cancellable except for violation of any term or obligation of such lease ''.

It is clear that even if a proposed lease is cancelable for violation of any of its terms or obligations by either landlord or tenant, it may still be a noncancelable lease within the meaning of subdivision (k). Paragraph 42 of the lease is clearly a limitation of the landlord's liability under the terms of the lease itself and in the opinion of the court not such cancellation as is contemplated under commercial emergency rent control.

Tenant further contends that paragraph 46th of the lease makes it a cancelable lease. Said paragraph reads as follows: "Notwithstanding the provisions of paragraph 45th hereof, it is understood and agreed that the Tenant mentioned herein intends to form a corporation and to assign this lease to such newly formed corporation. The Landlord herein consents to such an assignment upon the condition that the new corporation will assume all the terms and conditions of this lease in writing, and upon the further condition that William Cohen shall have at least a 50% stock interest in said corporation. It is further understood and agreed that upon the assignment of this lease by the Tenant to the new corporation, there will be delivered to the Landlord a copy of said assignment together with an Assumption Agreement executed by the new corporation. Upon delivery to the Landlord of the assignment and the Assumption Agreement as aforesaid, the present tenant, William Cohen, shall be relieved and released from any and all liability under this lease. After the assignment to the corporation shall have been made by the Tenant, William Cohen, the provisions of paragraph 45th hereof shall apply to all subsequent assignments and/or sub-letting."

Tenant argues that the prospective tenant could form a new corporation, retain 50% of the stock thereof, assign the lease to a new corporation and thereupon be relieved and released from any liability thereunder. All of this is mere surmise on the tenant's part. The good faith of the proposed tenant was not questioned at the trial. The practice of providing for the right of assignment of lease by an individual to a corporation, is quite common as is the requirement that the prospective tenant, in such event, own at least 50% of the stock in the corporation and that the corporation execute an assumption agreement. In fact paragraph "49" of the lease of the present tenant provides for the right of assignment to a corporation of which the tenant was to be a stockholder, officer and director and that the corporation execute an assumption agreement.

In the case of *532 Fulton Street* v. *Crown Drug Stores* (114 N. Y. S. 2d 764), an action for a declaratory judgment, the proposed tenant had actually assigned the lease to a corporation, in accordance with the terms of the lease. In declaring that such assignment is not convincing evidence of any lack of good faith upon the part of the plaintiff, the court (Supreme. Kings) held that plaintiff had fully complied with all the provisions of the " matched lease " provision of the Business Rent Law.

The landlord herein having otherwise complied with the " matched lease " provision and there being no evidence of any bad faith on her part, I find that the inclusion of the paragraph giving the named tenant the right of assignment to a corporation, does not render the lease a cancelable or conditional lease within the holding of the authorities cited by tenant.

In view of the foregoing, I deny tenant's motions on which I reserved decision and direct that a final order issue in favor of the landlord. Execution of the warrant stayed to December 10, 1953.